Joel A. Mullin, OSB No. 862533
jamullin@stoel.com
Charles F. Hinkle, OSB No. 710839
cfhinkle@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

    Attorneys for Defendant Oregonian Publishing Co.


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION


| | |
|---|---|
| MICHAEL HOWARD, SAMANTHA KOSSA, ORA HOOPER, AND JEANNA FUEHRER, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DIRECT RESPONSE MEDIA GROUP, INC., dba AKA DIRECT, AMAN ENTERPRISES, INC., ARCHWAYS SYSTEMS, INC., BILYEU-MILLER INSURANCE, LLC, COMMERCIAL INFORMATION SYSTEMS, LLC., COMPUTER CHECK VERIFICATION "CCV", CREDIT INTERNATIONAL CORP., CRIMINAL INFORMATION SERVICES, INC., CRIS INC., OREGON CREDIT SYSTEMS, INC., OREGONIAN PUBLISHING CO., PROFESSIONAL CREDIT SERVICES, INC., STUDIO K LTD., and WESTERN MERCANTILE AGENCY, INCORPORATED,<br><br>    Defendants. | Case No. 09-CV-1477-MO<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...............................................................................................1

II.   DESCRIPTION OF PLAINTIFFS' CLAIM..................................................2

III.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF
      CAN BE GRANTED...........................................................................................3

      A.    Requirements for stating a claim in federal court....................................3
      B.    Recent applications of *Twombly/Iqbal* in the Ninth Circuit and this court ...........4
      C.    Application of the *Twombly/Iqbal* requirements to this case ...............................5

            1.    Plaintiffs' allegations regarding Oregon DMV records and
                  Oregonian's access to them.......................................................5
            2.    Plaintiffs do not allege facts to show that Oregonian "obtained"
                  any personal information concerning plaintiffs..........................................7
            3.    Plaintiffs have not alleged evidentiary facts to support their claim
                  that Oregonian had no permissible purpose ..............................................11
            4.    The DPPA should not be applied in such a way as to chill the news
                  media's newsgathering function..............................................................14

IV.   THE COMPLAINT AGAINST OREGONIAN SHOULD BE DISMISSED FOR
      LACK OF STANDING......................................................................................16

V.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE .........................17

VI.   CONCLUSION .................................................................................................18

## TABLE OF AUTHORITIES

Page

CASES

*Ashcroft v. Iqbal,*
___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...............3, 4, 5, 6, 10, 11, 13, 14, 15

*Barker v. Int'l Union of Operating Eng'rs, Local 150,*
641 F. Supp. 2d 698 (N.D. Ill. 2009).....................................................................8, 9, 10, 11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).......................3, 4, 5, 6, 11, 13, 14, 18

*Branzburg v. Hayes,*
408 U.S. 665, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972)............................................................14

*Briggman v. Ross,*
U.S. Dist. Ct. (W.D. Va.), Civil No. 5:09CV00040, 2009 U.S. Dist. LEXIS 94634,
2009 WL 3254459 (W.D. Va., Oct. 9, 2009) ...................................................................12, 13

*Caviness v. Horizon Community Learning Center,*
590 F.3d 806 (2010) ...............................................................................................................5

*Center for Biological Diversity v. Kempthorne,*
588 F.3d 701 (9th Cir. 2009) ................................................................................................16

*Colwell v. Department of Health and Human Services,*
558 F.3d 1112 (9th Cir. 2009) ..............................................................................................16

*Comcast Cablevision of Broward County, Inc. v. Broward County, Fla.,*
124 F.Supp.2d 685 (S.D. Fla. 2000) ..................................................................................14-15

*Doe v. Wal-Mart Stores, Inc.,*
572 F.3d 677 (9th Cir. 2009) ..................................................................................................5

*Gardner v. Martino,*
563 F.3d 981 (9th Cir. 2009) ................................................................................................18

*Golden West Refining Co. v. Suntrust Bank,*
538 F.3d 1233 (9th Cir. 2008) ................................................................................................7

*Graczyk v. West Pub. Corp.,*
U.S. Dist. Ct. (N.D. Ill.), No. 09C4760, 2009 U.S. Dist. LEXIS 120256, 2009 WL
5210846 (N.D. Ill., Dec. 23, 2009)..............................................................9, 10, 15, 16, 17

Page ii – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

*Grosjean v. American Press Co.*,
    297 U.S. 233, 56 S. Ct. 444, 80 L.Ed. 660 (1936) .................................................. 14

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*,
    499 F.3d 1048 (9th Cir. 2007) ............................................................................... 2

*Jones v. Community Redevelopment Agency*,
    733 F.2d 646 (9th Cir. 1984) ................................................................................ 18

*Kasey v. Molybdenum Corp. of America*,
    467 F.2d 1284 (9th Cir.), *cert. denied*, 409 U.S. 1063 (1972) .............................. 18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)................................ 16, 18

*Pershing Park Villas v. United Pac. Ins.*,
    219 F.3d 895 (9th Cir. 2000) ................................................................................ 16

*Reno v. Condon*,
    528 U.S. 141, 120 S. Ct. 666, 145 L. Ed. 2d 587 (2000).......................................... 2

*Shadwell v. Clark*,
    U.S. Dist. Ct. (W.D. Va.), Civil No. 5:09CV00071, 2009 U.S. Dist. LEXIS 85282,
    2009 WL 2970515 (W.D. Va. Sept. 16, 2009)......................................... 11, 12, 13

*Skelley v. Ray Klein, Inc.*,
    2010 U.S. Dist. LEXIS 9856, 2010 WL 438148, Civil No. 09-6242-AA (D. Or.,
    February 3, 2010) ............................................................................................. 4, 5

*Thomas v. George, Hartz, Lundeen, Fulmer*,
    525 F.3d 1107 (11th Cir. 2008) ....................................................................... 12, 13

*United States v. Sherman*,
    581 F.2d 1358 (9th Cir. 1978) .............................................................................. 14

*William O. Gilley Enter. v. Atlantic Richfield*,
    588 F.3d 659 (9th Cir. 2009) ..................................................... 4, 5, 6, 10, 13, 15


STATUTES

1997 Or. Laws ch. 678, § 4.......................................................................................... 13

15 U.S.C. § 1692, *et seq.* ............................................................................................. 4

18 U.S.C. § 2721 *et seq.* ............................................................................................... 2

Page iii – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN**
**PUBLISHING COMPANY'S MOTION TO DISMISS**

18 U.S.C. § 2721(b) ........................................................................................................ 2, 12, 13

18 U.S.C. § 2721(b)(5) ......................................................................................................... 13, 14

18 U.S.C. §2721(b)(14) ........................................................................................................ 13, 15

18 U.S.C. § 2724(a) ............................................................................... 2, 7, 8, 9, 10, 11, 12

Or. Rev. Stat. § 802.179 ............................................................................................................. 13

Or. Rev. Stat. § 802.179(14) ................................................................................................ 13, 14, 15

**RULES**

Fed. R. Civ. Pro. 11(b) ................................................................................................................ 17

Fed. R. Civ. Pro. 12(b)(1) ................................................................................................ 1, 17, 18

Fed. R. Civ. Pro. 12(b)(6) ...................................................................... 1, 4, 5, 10, 11, 12, 18

Fed. R. Civ. Pro. 20(a)(2)(A) ...................................................................................................... 6

Fed. R. Civ. Pro. 21 ..................................................................................................................... 6

**OTHER AUTHORITIES**

2008 Oregon DMV Driver Statistics Report,
　　http://www.oregon.gov/ODOT/DMV/docs/stats/driver/gender/2008_Gender
　　_Summary.pdf ....................................................................................................................... 2

## I.    INTRODUCTION

Defendant Oregonian Publishing Company ("Oregonian") submits this memorandum in support of (1) its motion, pursuant to Fed. R. Civ. Pro. 12(b)(6), to dismiss the complaint as to Oregonian for failure to state a claim on which relief can be granted (because plaintiffs have not alleged evidentiary facts either to show that Oregonian obtained personal information about them from motor vehicle records or to show that Oregonian had no permissible purpose for purchasing what plaintiffs call "a bulk data file" from the State of Oregon), and (2) its motion, pursuant to Fed. R. Civ. Pro. 12(b)(1), to dismiss the complaint for lack of subject matter jurisdiction (because plaintiffs lack standing to bring their alleged claim against Oregonian).

Plaintiffs are two residents of Oregon and two residents of Florida who allege that they are holders of Oregon driver's licenses.  Represented by class counsel from Texas, they contend that Oregonian violated a federal statute that restricts access to motor vehicle records, but they do not allege that any Oregonian employee ever viewed, much less used, any personal information about any of them contained in any motor vehicle record.  They nevertheless seek a judgment in the billions of dollars against Oregonian—a draconian result that could have the effect of silencing Oregon's largest newspaper.

That result is plainly not intended by the statute on which plaintiffs base their claim. Their allegations fall far short of showing either that Oregonian violated the statute or that plaintiffs have standing to assert their claim.  For the reasons set out in this memorandum, the court should dismiss plaintiffs' claim against Oregonian with prejudice and without leave to amend.

Page 1 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

## II.    DESCRIPTION OF PLAINTIFFS' CLAIM

Plaintiffs' action is based on the Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ("DPPA"). The DPPA "regulates the disclosure of personal information contained in the records of state motor vehicle departments (DMVs)." *Reno v. Condon*, 528 U.S. 141, 143, 120 S. Ct. 666, 145 L. Ed. 2d 587 (2000). The statute creates a private right of action against a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the DPPA]." 18 U.S.C. § 2724(a).

Plaintiffs allege that they bring this case as a class action

> "on their own behalf and on behalf of all similarly situated individuals whose 'personal information' is contained in any 'motor vehicle record' maintained by the State of Oregon, within the meaning of the DPPA, 18 U.S.C. § 2725(1) and (3), who have not provided 'express consent,' within the meaning of the DPPA, 18 U.S.C. § 2725(5) to the State of Oregon for the distribution of their 'personal information' for purposes not enumerated by the DPPA, 18 U.S.C. § 2721(b), and whose 'personal information' has been knowingly 'obtain[ed]' and used by the Defendants within the meaning of the DPPA, 18 U.S.C. § 2724."

Complaint, ¶ 1 (alteration in original). According to the Driver and Motor Vehicle Services Division of the State of Oregon's Department of Transportation (hereafter, "Oregon DMV"), there were 3,123,329 licensed drivers in Oregon as of December 31, 2008.[1] Plaintiffs seek to represent a class of persons who have held Oregon driver's licenses since June 1, 2000 (Complaint, ¶ 39), and they seek a judgment in favor of class members in the sum of $2,500 "for each instance in which the Defendants obtained, disclosed, or used personal information

---

[1] *See* "2008 Oregon DMV Driver Statistics Report," available online at http://www.oregon.gov/ODOT/DMV/docs/stats/driver/gender/2008_Gender_Summary.pdf (last visited February 12, 2010). "[A] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (some internal quotation marks and citation omitted).

concerning the Plaintiff [*sic*] and members of the Class." (Complaint, p. 14, ¶ "a" of the prayer

for relief.) Plaintiffs allege that Oregonian violated the DPPA with respect to each member of

the class, so if it is assumed (conservatively) that there are currently 3 million licensed drivers in

Oregon, plaintiffs are seeking damages of $7.5 billion from Oregonian alone.

## III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

### A.    Requirements for stating a claim in federal court

The requirements for pleading a claim in federal court were set out in *Ashcroft v. Iqbal*,

___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009):

> "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *** A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *** The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *** Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' ***

> "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *** Rule 8 *** does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *** Determining whether a complaint states a plausible claim for relief

> will *** be a context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense. *** But
> where the well-pleaded facts do not permit the court to infer more
> than the mere possibility of misconduct, the complaint has
> alleged—but it has not 'show[n]'—'that the pleader is entitled to
> relief.' Fed. Rule Civ. Proc. 8(a)(2)."

*Iqbal*, 129 S. Ct. at 1949-50 (first alteration added; second and third alterations in original;

citations omitted).

### B.    Recent applications of *Twombly/Iqbal* in the Ninth Circuit and this court

The pleading requirements set out in *Twombly* and *Iqbal* apply in "all civil actions," *id.* at

1953,[2] and have been applied in many recent cases in which courts have granted Rule 12(b)(6)

motions to dismiss.  The complaint in *Skelley v. Ray Klein, Inc.*, 2010 U.S. Dist. LEXIS 9856,

2010 WL 438148, Civil No. 09-6242-AA (D. Or., February 3, 2010), for example, purported to

state a claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*  It

described several actions that the defendant had carried out in attempting to collect a debt from

the plaintiff, but it failed to allege how or why those actions constituted a violation of the statute.

With respect to plaintiff's claim that defendant had violated one subsection of the statute, Judge

Aiken held that "this court requires more than labels and conclusions to entitle a plaintiff to the

relief he seeks." 2010 U.S. Dist. LEXIS 9856 at *5.  With respect to another subsection, Judge

Aiken wrote:

> "Plaintiff's allegation that defendant engaged in unfair or
> unconscionable means by refusing to take payment in full does not
> constitute a violation under § 1692f. Plaintiff's assertion is mere
> speculation and insufficient to state a claim pursuant to § 1692f.
> Plaintiff does little more than reference § 1692f in his complaint."

---

[2] *See also William O. Gilley Enter. v. Atlantic Richfield*, 588 F.3d 659, 667 (9th Cir.
2009) ("the pleading requirements stated in *Twombly* apply in all civil cases").

Page 4 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN
PUBLISHING COMPANY'S MOTION TO DISMISS**

*Id*. at \*7-\*8.  And with respect to a third subsection, Judge Aiken concluded: "Plaintiff's claims are speculative as he relies only on his assertion that the phone calls are 'false and deceptive.' That label is insufficient to state a claim." *Id*. at \*8-\*9.  Based on those conclusions, Judge Aiken granted the defendant's motion to dismiss the complaint under Rule 12(b)(6).

The Ninth Circuit reached a similar conclusion with respect to the complaints in *William O. Gilley*, 588 F.3d at 669 (holding that plaintiffs "must plead not just ultimate facts (such as a conspiracy), but *evidentiary* facts" (emphasis added) and that "[d]espite its length and detail," the complaint did not satisfy the *Twombly* requirements as applied to a claim under the Sherman Act); *Doe v. Wal-Mart Stores, Inc*., 572 F.3d 677, 683 (9th Cir. 2009) (affirming dismissal of various tort and contract claims and holding that "[p]laintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss."); and *Caviness v. Horizon Community Learning Center*, 590 F.3d 806, 818 (2010) (applying *Iqbal* in affirming Rule 12(b)(6) dismissal where plaintiff's allegations were "insufficient to raise a reasonable inference" that defendant was state actor for purposes of claim under 42 U.S.C. § 1983).

C.    **Application of the *Twombly/Iqbal* requirements to this case**

1.    **Plaintiffs' allegations regarding Oregon DMV records and Oregonian's access to them**

Plaintiffs describe the State of Oregon's policy with respect to access to motor vehicle records in paragraphs 29 and 30 of their complaint, as follows:

> "29.    Once a 'person,' as that term is defined by the DPPA, certifies to the State of Oregon that they have a lawful purpose for some personal information and/or have obtained any requisite consent the State of Oregon, through its Department of Licensing, provides that person with a copy of the State's *entire*

Page 5 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

*database* of names, addresses and other personal information –
millions of persons' personal information."

"30.    According to the State of Oregon, if a contract is in
place, the recipient receives one bulk data file containing all active
vehicle records."

(Emphasis in original.) (Plaintiffs refer in Paragraph 29 to a "Department of Licensing," but

Oregon has no "Department" with that name.  For purposes of this motion, Oregonian will

assume that plaintiffs are referring to the Oregon DMV.)

The one and only action by Oregonian alleged in the complaint appears in Paragraph 31:

"31.    Each Defendant in this litigation purchased this
entire database of names from the State of Oregon.  Defendants
each have a signed contract with the State of Oregon whereby they
claim that they have a proper purpose for obtaining each piece of
personal information."[3]

Plaintiffs' complaint does not meet the *Twombly/Iqbal* standards for stating a claim for

relief for two reasons:  (1) plaintiffs do not allege "evidentiary facts," *William O. Gilley*, 588

F.3d at 669, to support their claim that Oregonian "obtained" any personal information about

them from Oregon's motor vehicle records, and (2) they do not allege any "evidentiary facts" to

show that Oregonian had no permitted purpose in obtaining what plaintiffs refer to as the "bulk

data file containing all active vehicle records." (Complaint, ¶ 30.)

---

[3] Plaintiffs have named 14 separate entities as defendants:  two "limited liability
companies," described in ¶¶ 9 and 10 of the complaint, and 12 corporations, described in ¶¶ 6
through 8 and 11 through 19 of the complaint.  Plaintiffs do not assert a right to relief against the
defendants "jointly, severally, or in the alternative with respect to or arising out of the same
transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. Pro. 20(a)(2)(A),
so it appears that the defendants have been improperly joined in this case.  Under Fed. R. Civ.
Pro. 21, the court may "add or drop a party" or "sever any claim against a party," but it need not
consider that issue in connection with Oregonian's motion to dismiss.

Page 6 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN
PUBLISHING COMPANY'S MOTION TO DISMISS**

### 2.    Plaintiffs do not allege facts to show that Oregonian "obtained" any personal information concerning plaintiffs

An evaluation of the sufficiency of plaintiffs' claim that Oregonian violated the DPPA must begin with the language of the statute. The private right of action authorized by the DPPA is defined and limited by 18 U.S.C. § 2724(a), which reads as follows:

> "A person who knowingly obtains, discloses or uses
> personal information, from a motor vehicle record, for a purpose
> not permitted under this chapter shall be liable to the individual to
> whom the information pertains, who may bring a civil action in a
> United States district court."

Significantly, the statute does not authorize a civil action against a person who "obtains a motor vehicle record." Rather, the statute authorizes a civil action against a person who "obtains \*\*\* personal information, *from* a motor vehicle record." (Emphasis added.) That choice of words was not accidental; the wording of that section responds to the problem that Congress was addressing, as explained by plaintiffs themselves in their complaint. The DPPA emerged from a congressional concern over the fact that "several well-publicized incidents [had occurred] in which criminals had used publicly available motor vehicle records to identify and stalk their victims." (Complaint, ¶ 22.) In each of those incidents, according to plaintiffs, the criminals had asked for and obtained the home addresses of their specific victims from the relevant state agencies, and there is no indication that the criminals in any of those cases had obtained a "bulk data file" of motor vehicle records. (*Id.*) What those criminals had done was to obtain "personal information *from* a motor vehicle record," and that is what Congress made actionable in § 2724(a) of the DPPA.

When interpreting a statute, "'[c]ourts should give meaning to every word of a statute if possible,'" *Golden West Refining Co. v. Suntrust Bank*, 538 F.3d 1233, 1239 (9th Cir. 2008) (citation omitted), and it would violate that principle to interpret § 2724(a) of the DPPA as

Page 7 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

creating a private right of action against someone who has done nothing more than obtain a "bulk data file." (Complaint, ¶ 30.) The private right of action created by § 2724(a) is for the act of "obtain[ing], disclos[ing] or us[ing] personal information, *from* a motor vehicle record"—not for the act of obtaining a "bulk data file."

That is exactly the conclusion reached by the court in *Barker v. Int'l Union of Operating Eng'rs, Local 150*, 641 F. Supp. 2d 698 (N.D. Ill. 2009). In that case, the court held that "a private right of action does not lie under § 2724(a) based on knowing obtainment of a 'motor vehicle record' for a purpose not permitted by the DPPA absent the additional showing that 'personal information' was obtained from that record." *Id.* at 706.[4] The plaintiffs in *Barker* alleged that the defendant Local 150 had violated the DPPA "by knowingly obtaining, disclosing, or using their personal information, from a motor vehicle record for purposes not permitted by the DPPA," *id.* at 700, and they sought to represent a class of persons whose personal information had been "obtained" from state motor vehicle records. In support of their motions for a preliminary injunction and for class certification, the *Barker* plaintiffs submitted affidavits showing that Local 150 had "obtained *** CDs from the Illinois Secretary of State" that contained the names and addresses of millions of Illinois drivers. *Id.* at 701. In other words, the defendant in *Barker* did what Oregonian is alleged to have done here: it obtained a bulk data file containing personal information about people who had driver's licenses. With respect to that bulk data file (that is, the CDs), the evidence in *Barker* showed that:

> "In order to view the data on the CDs, the user must insert the CD into the computer's CD drive, start the application software, and

---

[4] Searches on the Lexis legal research service on February 9, 2010, and on the WestLaw service on February 17, 2010, did not locate any decision by the Ninth Circuit or by the District Court for the District of Oregon applying or interpreting the DPPA.

Page 8 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

> advance through a series of screens until a screen is reached where
> the user may input a license plate number. A valid license plate
> number will yield a motor vehicle record containing the data fields
> set out above. *** [T]he above information can be retrieved from
> the CDs in question with reference to any Illinois license plate
> registered at that time."

*Id.* (footnote omitted).

The court held that the mere act of obtaining a CD containing personal information

relating to millions of Illinois drivers was insufficient to constitute a violation of the DPPA.

> "[T]here is no dispute that the CDs in question contain 'motor
> vehicle records' which in turn contain the 'personal information'
> of millions of owners of motor vehicles registered in Illinois.
> However, § 2724(a) requires that plaintiffs show that Local 150
> knowingly obtained 'personal information, *from* a motor vehicle
> record,' and not that Local 150 simply obtained the 'motor vehicle
> record' itself. As explained by plaintiffs' information technology
> consultant, the user of the CDs has to perform a sequence of steps
> to initiate a license plate search that will yield, among other things,
> personal information in the form of the registered owner's name
> and address. *Thus, simply obtaining the CD containing the motor
> vehicle records is not equivalent to obtaining the personal
> information contained therein.*"

*Id.* at 705-06 (footnote omitted; emphasis added).[5]

The *Barker* court's conclusion that the mere act of obtaining a bulk data base containing

personal information from DMV records does not violate the DPPA is supported by *Graczyk v.*

*West Pub. Corp.*, U.S. Dist. Ct. (N.D. Ill.), No. 09C4760, 2009 U.S. Dist. LEXIS 120256, 2009

WL 5210846 (N.D. Ill., Dec. 23, 2009). The plaintiffs in that case alleged that WestLaw

"acquired motor vehicle records and the corresponding 'personal information' *** of millions of

---

[5] The named plaintiffs in *Barker* submitted affidavits showing that Local 150 had actually
accessed their individual personal information (such as home addresses) from the CDs and had
used that information by providing it to defendant's agents who then showed up outside
plaintiffs' homes. *Barker*, 641 F. Supp.2d at 700-01. Because the plaintiffs there could make
that evidentiary showing, the court in *Barker* addressed the meaning of the DPPA on a motion
for class certification rather than on a motion to dismiss. In contrast, a motion to dismiss is
appropriate in this case because plaintiffs do not *allege* any evidentiary facts to show that
Oregonian actually accessed or used any personal information pertaining to them.

Page 9 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN
PUBLISHING COMPANY'S MOTION TO DISMISS**

licensed drivers *** from the department of motor vehicles of various states ***.  [WestLaw] then allegedly made the information in the records available for search and sale on the internet." 2009 U.S. Dist. LEXIS 120256 at *2 (footnote omitted).  The court granted WestLaw's motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6), holding that WestLaw's purchase of the motor vehicle records in bulk did not constitute a violation of DPPA.  Obviously, if the mere fact of purchasing a "bulk data file" (as plaintiffs allege in paragraph 30 of the present complaint) were enough to constitute "obtaining" personal information in violation of the DPPA, then the court in *Graczyk* would have denied WestLaw's motion to dismiss.

The analysis and holdings of the courts in *Barker* and *Graczyk* show that plaintiffs' allegations in this case fail to state a claim under the DPPA.  Plaintiffs have alleged only that Oregonian "purchased" a "database of names from the State of Oregon" (Complaint, ¶ 31) and that Oregonian thereby "obtained 'personal information' of individuals from State of Oregon 'motor vehicle records' in violation of DPPA."  (Complaint, ¶ 36.)  But this database was contained, plaintiffs allege, in "one bulk data file" (*id.*, ¶ 30), and there is no allegation that Oregonian actually accessed any of plaintiffs' personal information from that file.  There is no allegation of any "evidentiary facts" (*William O. Gilley*, 588 F.3d at 669) to show, in the words of the statute,  that Oregonian "obtain[ed] *** personal information, *from* a motor vehicle record."  18 U.S.C. § 2724(a) (emphasis added).

Plaintiffs' complaint thus "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949.  Their allegation that Oregonian "obtained 'personal information' of individuals from State of Oregon 'motor vehicle records' in violation of DPPA" (Complaint, ¶ 36) is a textbook example of the kind of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice" to state a claim

Page 10 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

for relief. *Id.* It is simply "a legal conclusion couched as a factual allegation," which a court "is not bound to accept as true" for purposes of a Rule 12(b)(6) motion to dismiss. *Id.* at 1950.

Federal pleading rules "require[] a 'showing,' rather than a blanket assertion, of entitlement to relief," *Twombly*, 127 S. Ct. at 1965 n. 3, and plaintiffs' complaint does not satisfy that requirement. This court should follow *Barker* and conclude, as a matter of law, that the mere act of obtaining a "database of names," which is the basis for plaintiffs' claim against Oregonian (Complaint, ¶ 31), "is not equivalent to obtaining the personal information contained therein." *Barker*, 641 F. Supp. 2d at 705-06. Plaintiffs' failure to allege evidentiary facts to support a contention that Oregonian obtained personal information "*from*" the "bulk data file" (Complaint, ¶ 30) means that they have failed to state a claim for violation of the DPPA.

> **3.     Plaintiffs have not alleged evidentiary facts to support their claim that Oregonian had no permissible purpose**

Plaintiffs allege that Oregonian "cannot and do[es] not have a permissible purpose to obtain all the information contained in the State of Oregon's database." (Complaint, ¶ 33). That allegation states a legal conclusion, and simply paraphrases the provision in DPPA that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable ***." 18 U.S.C. § 2724(a). But as noted above, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citation omitted), and a plaintiff in a case under the DPPA must allege "sufficient *facts* to demonstrate plausibly that [defendant] accessed [a plaintiff's] driver's information 'for a purpose not permitted under [the DPPA].'" *Shadwell v. Clark*, U.S. Dist. Ct. (W.D. Va.), Civil No. 5:09CV00071, 2009 U.S. Dist. LEXIS 85282 at *11, 2009 WL 2970515 (W.D. Va. Sept. 16, 2009) (emphasis added). The

Page 11 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

court in *Shadwell* dismissed the complaint under Rule 12(b)(6) precisely because plaintiff had failed to meet that pleading requirement.

The court in *Briggman v. Ross*, U.S. Dist. Ct. (W.D. Va.), Civil No. 5:09CV00040, 2009 U.S. Dist. LEXIS 94634 at *8, 2009 WL 3254459 (W.D. Va., Oct. 9, 2009), reached a similar conclusion. It granted a Rule 12(b)(6) motion to dismiss the complaint in a DPPA action, because "[w]hile [plaintiff] asserts, in a conclusory fashion, that the defendants violated the DPPA by accessing his DMV records, his complaint does not contain any factual allegations that plausibly suggest that the defendants accessed his records 'for a purpose not permitted under [§ 2721(b)].' 18 U.S.C. § 2724(a).").

The decisions in *Shadwell* and *Briggman* with respect to the requirements for pleading that a defendant in a DPPA action obtained records "for a purpose not permitted" by § 2721(b) of the statute are supported by *Thomas v. George, Hartz, Lundeen, Fulmer*, 525 F.3d 1107 (11th Cir. 2008). The plaintiff in that case argued that in a DPPA action, the burden should be on the defendant to prove that the defendant had a "purpose" that was "permitted" by § 2721(b), "because the factual presence of any one permissible purpose in § 2721(b) is 'peculiarly within the knowledge' of the defendant." *Id.* at 113 (citation omitted). The court disagreed, and held that the burden is on the plaintiff to prove that the defendant obtained records "for a purpose not permitted" by § 2721(b). *Id.* at 1112-14. The court noted that the plaintiff "will not typically be left in the dark as to which § 2721(b) enumeration, if any, will be asserted as applicable by the defendant," *id.* at 1114, because the relevant permitted purpose will typically be evident from the identity of the defendant. Thus, in *Thomas* itself, the court noted that since the defendant was a law firm, "there is a high probability that subsection (b)(4) [permitting disclosure of information from a motor vehicle record for use in court proceedings] is at issue." *Id.*

Page 12 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

It is similarly unlikely that the plaintiffs in this case are "in the dark" as to the permissible uses that Oregonian will assert to be applicable. Since Oregonian publishes a daily newspaper in Portland, plaintiffs can safely assume that "there is a high probability" that subsections (b)(5) and (b)(14) of § 2721(b) will be at issue. The former allows access to information "[f]or use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals," and the latter allows access:

> "For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety."

Pursuant to the authority given it by that section of the DPPA, the Oregon legislature in 1997 enacted a statute containing a list of authorized uses for the release of personal information from motor vehicle records. 1997 Or. Laws ch. 678, § 4 (codified as Or. Rev. Stat. § 802.179). Among those authorized uses is the following use that is directed specifically (and exclusively) to the news media:

> "The department [of Transportation] shall disclose personal information to representatives of the news media for the gathering or dissemination of information related to the operation of a motor vehicle or to public safety."

Or. Rev. Stat. § 802.179(14).

Since the burden is on plaintiffs in DPPA cases to *prove* that the defendant had "no permissible purpose" for obtaining information from DMV records (*Thomas*, 525 F.3d at 1112-14), the courts in *Shadwell* and *Briggman* were correct in applying the *Twombly/Iqbal* pleading requirements to conclude that the burden is also on plaintiffs in DPPA actions to *plead* that the defendant had "no permissible purpose" for doing so. Application of those requirements in this case means that plaintiffs stated a claim against Oregonian on which relief can be granted only if

Page 13 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

they alleged "not just ultimate facts *** but *evidentiary* facts" (*William O. Gilley*, 588 F.3d at 669 (emphasis added)), to support their contention that Oregonian, as a member of the news media, had no legitimate "research" reason (within the meaning of 18 U.S.C. § 2721(b)(5)) and no legitimate reason relating to "the gathering or dissemination of information related to the operation of a motor vehicle or to public safety" (within the meaning of Or. Rev. Stat. § 802.179(14)) for obtaining a copy of the Oregon DMV's bulk data file. They have alleged no such "evidentiary facts," and they have therefore failed to meet "the plausibility standard" that the Supreme Court requires of a complaint. *Iqbal*, 129 S. Ct. at 1949.

That plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id*. (citations omitted). In *Iqbal* itself, the Court held that the plaintiff's complaint "does not contain any factual allegation sufficient to plausibly suggest" liability on the part of the defendants, *id*. at 1952, and a similar conclusion is appropriate here. There are no factual allegations in plaintiffs' complaint "to plausibly suggest" that Oregonian did not have permissible reasons for obtaining the database of names from the Oregon DMV.

### 4. The DPPA should not be applied in such a way as to chill the news media's newsgathering function

The importance of applying the high pleading standards of *Twombly* and *Iqbal* to this case is reinforced by a significant additional consideration: namely, the fact that Oregonian is engaged in newsgathering, which "is an activity protected by the First Amendment." *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978). "Without some protection for seeking the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972). "A primary purpose of the First Amendment is 'to

Page 14 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

preserve an untrammeled press as a vital source of public information.'" *Comcast Cablevision of Broward County, Inc. v. Broward County, Fla.*, 124 F.Supp.2d 685, 693 (S.D. Fla. 2000) (*quoting Grosjean v. American Press Co.*, 297 U.S. 233, 250, 56 S. Ct. 444, 80 L.Ed. 660 (1936)). Consistent with those principles, a court should not allow an action seeking $7.5 billion in damages from a newspaper to proceed on the basis of a complaint that does not contain allegations of "evidentiary facts" (*William O. Gilley*, 588 F.3d at 669) sufficient to "state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

That conclusion is reinforced by the terms of the DPPA itself. As noted above, one of the "permissible uses" for personal information obtained from motor vehicle records enumerated in the DPPA is "any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. §2721(b)(14). And as also noted above, the State of Oregon acted pursuant to that authority to create an exemption that is available only to the news media. Or. Rev. Stat. § 802.179(14) (quoted *supra* at 14). The State of Oregon has thus recognized both the important role that the news media play in informing the public, and the important interest shared by the public *and* the news media in ensuring that the facts reported by the news media are accurate.

Those constitutional and public policy considerations support Oregonian's contention that plaintiffs' complaint against it should be promptly dismissed. In *Graczyk, supra*, the court said that imposing liability on WestLaw for "potentially *** billions of dollars in liquidated damages" would be "an absurd result not in keeping with the plain language, intent or spirit of the DPPA." *Graczyk*, 2009 U.S. Dist. LEXIS 120256 at *18. The same observation is appropriate in this case, in which plaintiffs are asking this court to award them (and the purported class that they seek to represent) billions of dollars in damages against Oregonian.

Page 15 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

IV.    **THE COMPLAINT AGAINST OREGONIAN SHOULD BE DISMISSED FOR LACK OF STANDING**

"[I]ssues of constitutional standing are jurisdictional." *Pershing Park Villas v. United Pac. Ins.*, 219 F.3d 895, 899 (9th Cir. 2000). "To demonstrate standing, the plaintiff must allege an injury in fact to show he has 'such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009) (citation omitted). "The burden of establishing *** standing rests on the party asserting the claim." *Colwell v. Department of Health and Human Services*, 558 F.3d 1112, 1121 (9th Cir. 2009).

> "The 'irreducible constitutional minimum' of Article III standing has three 'elements' ***:

> > First, the plaintiff must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'. Second, there must be a causal connection between the injury and conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*Id.* at 1121-22 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal alterations, some quotation marks, and ellipses omitted).

In *Graczyk, supra*, the court held that the plaintiffs had failed to allege facts sufficient to show that they had standing:

> "The complaint alleges that defendant obtained and disseminated plaintiffs' and proposed Class members' personal information and/or highly restricted personal information for search and sale on the internet in violation of the DPPA. *** [T]hese allegations fall woefully short of establishing standing. First, because plaintiffs have not alleged or pled any facts showing that defendant improperly obtained and/or used their personal information, plaintiffs have failed to show that they have suffered an injury-in-fact. Second, plaintiffs have not pled a causal

Page 16 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

> connection between defendant's alleged violations of the DPPA
> and the alleged harm plaintiffs suffered. Finally, plaintiffs have
> failed to demonstrate that a favorable decision in the instant case is
> likely to redress their alleged injury. Accordingly, plaintiffs have
> failed to establish standing, and defendant's motion to dismiss
> pursuant to 12(b)(1) is granted."

*Graczyk*, 2009 U.S. Dist. LEXIS 120256 at *19-20.

That reasoning applies with even greater force in this case. Plaintiffs here have not

alleged any injury in fact as a result of any act by Oregonian. They have not alleged any

evidentiary facts showing that Oregonian improperly obtained personal information about them

from a motor vehicle record. They have not alleged that any employee of Oregonian has ever

looked at, much less "used," any "personal information" about them in the "bulk data file" that

Oregonian allegedly obtained from DMV. Plaintiffs' allegations do not demonstrate that a

favorable decision in this case is likely to redress their alleged injury.

This court should follow the decision in *Graczyk* and dismiss plaintiffs' complaint for

lack of standing.

## V.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The complaint should be dismissed with prejudice, and without leave to file an amended

complaint, unless plaintiffs represent to the court (a) that they can allege that Oregonian actually

obtained personal information about them "from" the bulk data base that Oregonian allegedly

purchased from the Oregon DMV, and (b) that they can make that allegation consistently with

their obligation, set out in Fed. R. Civ. Pro. 11(b), to "certif[y]" that "the factual contentions [in

any amended complaint] have evidentiary support."

Unless they can make that representation to the court, any amended complaint would be

futile, because it would be subject to dismissal for all the reasons set out in this memorandum.

"[A]mendments should not be allowed merely to permit a restatement of the same facts in

Page 17 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN
PUBLISHING COMPANY'S MOTION TO DISMISS**

different language[.]" *Kasey v. Molybdenum Corp. of America*, 467 F.2d 1284, 1285 (9th Cir.),

*cert. denied*, 409 U.S. 1063 (1972). A district court properly denies leave to file an amended

complaint that does not "correct the deficiencies" of the earlier complaint. *Jones v. Community*

*Redevelopment Agency*, 733 F.2d 646, 650-51 (9th Cir. 1984). *See also Gardner v. Martino*, 563

F.3d 981, 991 (9th Cir. 2009) (district court properly denied leave to amend where plaintiffs "did

not propose any new facts").

## VI.    CONCLUSION

Plaintiffs have not alleged sufficient evidentiary facts either to "nudge[] their claims

across the line from conceivable to plausible," *Twombly*, 127 S. Ct. at 1974, or to establish that

they have suffered the kind of "injury in fact" that is the "'irreducible constitutional minimum'

of Article III standing." *Lujan*, 504 U.S. at 560-61. Their complaint against Oregonian should

therefore be dismissed with prejudice, both under Rule 12(b)(6), because they have failed to state

a claim (and cannot state a claim) on which relief can be granted, and under Rule 12(b)(1),

because plaintiffs have not alleged (and cannot allege) facts sufficient to show that they have

standing to assert a claim against Oregonian under the DPPA.

DATED: February 18, 2010.

Respectfully submitted,

*/s/  Charles F. Hinkle*
Joel A. Mullin, OSB No. 862533
jamullin@stoel.com
Charles F. Hinkle, OSB No. 710839
cfhinkle@stoel.com
Stoel Rives LLP
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant Oregonian
Publishing Company

Page 18 – **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OREGONIAN**
   **PUBLISHING COMPANY'S MOTION TO DISMISS**

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **MEMORANDUM OF LAW IN SUPPORT**

**OF DEFENDANT OREGONIAN PUBLISHING COMPANY'S MOTION TO DISMISS**

on the following named person(s) on the date indicated below by:

☐   mailing with postage prepaid

☐   hand delivery

☐   facsimile transmission

☐   overnight delivery

☐   email

☒   notice of electronic filing using the Cm/ECF system

George A. Otstott
Otstott & Jamison, PC
4849 Greenville Ave., Ste 1620
Dallas, TX  75206
Email: hogmang@aol.com

Joseph H. Malley
Law Office of Joseph H. Malley, PC
1045 N. Zang Blvd.
Dallas, TX  75208
Email:  malleylaw@gmail.com

Jeremy R. Wilson
The Corea Firm PLLC
1201 Elm Street, Ste. 4150
Dallas, TX  75270
Email:  jwilson@corealaw.com

William C. Carpenter, Jr.
474 William Street
Suite 303
Eugene, OR  97401
Email:  wcarpenter@igc.org

Page 1 – **CERTIFICATE OF SERVICE**

Jeffrey I. Hasson
Davenport & Hassson, LLP
12707 NE Halsey Street
Portland, OR  97230
Email:  hasson@dhlaw.biz

DATED:  February 18, 2010.                STOEL RIVES LLP


                                          /s/ Charles F. Hinkle
                                          Charles F. Hinkle, OSB No. 710839
                                          cfhinkle@stoel.com
                                          Telephone:  (503) 224-3380
                                          Attorneys for Defendant Oregonian
                                          Publishing Co

Page 2 – **CERTIFICATE OF SERVICE**